**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Jeffrey K. Landrum,** | ) | |
| **For himself and on behalf of all others** | ) | |
| **similarly situated,** | ) | **Civil Action** |
| **Plaintiffs,** | ) | **File No. 4:14-cv-01811** |
| | ) | |
| **v.** | ) | |
| | ) | **Jury Trial Demanded** |
| **Harris County Emergency Corps,** | ) | |
| **Defendant.** | ) | |
| | ) | |

---

**Plaintiff Jeffrey K. Landrum's Response and Opposition to Defendant Harris County
Emergency Corps' Motion for Partial Summary Judgment and Brief in Support**

---

Respectfully submitted,

**ALI  S. AHMED, P.C.**

By:   /s/ Salar Ali Ahmed
  **Salar Ali Ahmed**
  Federal Id. No. 32323
  State Bar No. 24000342
  One Arena Place
  7322 Southwest Freeway, Suite 1920
  Houston, Texas 77074
  Telephone:  (713) 223-1300
  Facsimile:  (713) 255-0013
  aahmedlaw@gmail.com

  **Attorney for Plaintiff**
  **Jeffery K. Landrum, and**
  **Members of the Putative Classes**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     Introduction ................................................................................................   1

II.    Nature and Stage of Proceeding ..............................................................   3

III.   Summary of the Argument .......................................................................   3

IV.    Statement of the Issues ............................................................................   5

V.     Statement of Background Facts ...............................................................   5

    A.   Mr. Landrum's application process with HCEC ...............................   5

    B.   HCEC has utilized the identical application process for all members
        of the proposed Background Check Class ........................................   6

VI.    Argument and Authorities ........................................................................   7

    A.   Summary judgment standard ...........................................................   7

    B.   HCEC's inclusion of a liability release provision in the FCRA disclosure
        it had Landrum sign before procuring a consumer report about
        Landrum constituted a willful violation of 15 U.S.C. § 1681b(b)(2) ............   8

        1.   A person may not procure a consumer report for employment
            purposes unless a clear and conspicuous disclosure has been
            made in writing to the consumer before the report is procured
            "in a document that consists solely of the disclosure" .............................   14

        2.   HCEC violated 15 U.S.C. § 1681b(b)(2) by including liability
            release provisions in the multitude of disclosures HCEC
            provided to Landrum ............................................................................   15

        3.   Landrum's allegations of willfulness ......................................................   15

        4.   The express statutory language of 15 U.S.C. § 1681b(b)(2)
            demonstrates that any interpretation that such section permits
            the inclusion of liability waiver and release provisions in a
            disclosure form is "objectively unreasonable" ........................................   17

**<u>TABLE OF CONTENTS</u>**
**(Continued)**

                                                                    **Page**

    5.  Congress' express adoption of the "authorization" exception to
        the "consisting solely of the disclosure" requirement in
        response to FTC advisory opinions demonstrates that the
        inclusion of liability release and waiver provisions in a disclosure
        form is clearly statutorily impermissible ................................. 23

    6.  The lack of Circuit Court authority on the issue does not
        insulate HCEC from liability ................................. 25

VII.  Conclusion and Prayer ............................................. 26

Certificate of Service .................................................... 26

Table of Exhibits ....................................................... 27

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Jeffrey K. Landrum,** | ) | |
| **For himself and on behalf of all others** | ) | |
| **similarly situated,** | ) | **Civil Action** |
| **Plaintiffs,** | ) | **File No. 4:14-cv-01811** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Harris County Emergency Corps,** | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |
| | ) | |

---

**Plaintiff Jeffrey K. Landrum's Response and Opposition to Defendant Harris County
Emergency Corps' Motion for Partial Summary Judgment and Brief in Support**

---

**To The Honorable District Court Judge Kenneth M. Hoyt**:

NOW COMES Class Plaintiff, Jeffrey K. Landrum (hereinafter, "Mr. Landrum" or "Plaintiff"), and herein files his Response and Opposition to Defendant Harris County Emergency Corps' Motion for Partial Summary Judgment and Brief in Support.  Plaintiff would respectfully show the Honorable Court as follows:

**I.**

**Introduction**

Class Plaintiff Jeffrey K. Landrum initiated this class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), alleging class claims against Defendant Harris County Emergency Corps ("HCEC" or "Defendant").  Plaintiff asserts multiple FCRA claims against HCEC on his behalf, and on behalf of two separate classes of HCEC employees and prospective employees.

In Count One, Plaintiff asserts an FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class" consisting of all employees or prospective employees of

HCEC in the United States who (a) did not receive a pre-adverse action notice, or (b) received notice on or after November 7, 2008 that HCEC was taking adverse employment action against them based, in whole or in part, on information contained in a consumer report, and who were not provided a copy of such report in advance.  In Counts Two and Three, Plaintiff asserts a pair of FCRA claims under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class" consisting of all employees or prospective employees of HCEC in the United States who were the subject of a consumer report procured by HCEC (or that HCEC caused to be procured) on or after November 7, 2008. On these class-wide bases, Mr. Landrum seeks statutory damages, punitive damages, and attorneys' fees and costs for HCEC's willful violations of the FCRA.

Defendant asks for dismissal of the "Background Check Class", the sub-class that seeks redress under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii). Reading desperately between the proverbial tea leaves, Defendant claims class Plaintiff cannot maintain that HCEC willfully violated the authorization and disclosure requirements of 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii), and therefore cannot maintain the "Background Check Class".

Plaintiff opposes Defendant's notion that the "Background Check Class" is not viable. Plaintiff demonstrates conclusively that through Defendant's standardized hiring practices, and through actions taken consistent with those practices, Defendant willfully violated the FCRA's authorization and disclosure requirements.  For instance, the inclusion of a liability release in a stand-alone disclosure is a particularly pernicious violation of the FCRA, as it transforms a document designed to inform consumers of their statutory rights into a waiver of those very same rights.  That fact, as well as evidence of Defendant's reckless disregard of its statutory duties, makes Defendant's violation willful.  Defendant's arguments also fail because any adjudication pertaining to the merits of this class action (i.e., whether Defendant violated the FCRA's

authorization and disclosure requirements, and whether such violations were willful) is inappropriate prior to the Court ruling on class certification in this matter.

Defendants' Motion for Partial Summary Judgment must therefore be denied.

## II.
## Nature and Stage of Proceeding

On June 29, 2014, Mr. Landrum filed this class action under Fed. R. Civ. P. 23 to pursue the above described individual and class-wide claims (Docket Entry No. 1). On October 10, 2014, Defendant made its appearance via counsel, and filed its Answer (Docket Entry No. 5). Per the Court's Scheduling Order entered November 3, 2014, the discovery period ends September 30, 2015, and the dispositive motions deadline is October 30, 2015 (Doc. No. 8). To date, the parties have conducted extensive written discovery, and Plaintiff anticipates filing his motion for class certification within the next two weeks.

## III.
## Summary of the Argument

The FCRA permits an employer, such as HCEC, to "procure or cause to be procured" a consumer report for employment purposes only if the employer has complied with its disclosure obligations "in a document that consists solely of the disclosure", and only if the employer has certified its compliance with FCRA's obligations to the consumer reporting agency from which the report is purchased. In this regard, the FCRA's mandates are straightforward. Further, the statute was instituted to protect the privacy rights of individuals, and Congress intended the statute to be construed liberally in favor of the individuals it was meant to protect.

In an attempt to evade the clear liability imposed upon HCEC under the FCRA, Defendant seeks dismissal of the "Background Check Class", claiming that in its hiring process, it did not commit willful violations of 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) when it made

impermissible disclosures pertaining to its procurement of background reports on a large class of individuals who applied for jobs with HCEC.

Defendant, however, is unable to demonstrate how requiring a job applicant to release liability in connection with the individual's background check (i.e., by inserting explicit and detailed release language in the background authorization request) is "objectively reasonable" and thus not in willful violation of the FCRA's plain language.  On the contrary, HCEC's class-wide procedure of requiring each job applicant in the "Background Check Class", a self-professed class comprising 354 individuals, to release HCEC from liability resulting from the background screening process is objectively unreasonable, and thus willful, because it cannot be deemed otherwise either under the FCRA, or under relevant case law, or under the Federal Trade Commission's ("FTC") repeated guidance prohibiting the act of obtaining a liability release from a job applicant.

Congress' unequivocal statutory prohibition of an employer seeking to hold itself harmless by obtaining a release is understandable given that the FCRA was instituted to protect the very rights of privacy of consumers (which the statute defines to include employees and job applicants) against illegal and unauthorized background searches on consumers by users ("User" defined to include employers and prospective employers). Because a liability release squarely cuts against the very purpose of the FCRA, it has no place in a disclosure and authorization form, and is as such deemed a willful violation of the statute.

Finally, contrary to what Defendant may assert, a material disputed fact issue is prevalent and dominates this class action. The very standard over which the parties have dispute (i.e., if Defendant engaged in conduct that was "objectively reasonable" under the statute) is a fact-intensive inquiry requiring a fact-finder to decide whether or not Defendant's behavior and state

of mind at the time it committed the alleged violations of the FCRA were "objectively reasonable", and whether or not they were "willful".

## IV.
## Statement of the Issues

- Whether there exists a genuine issue of material fact as to the Defendant's willful non-compliance with 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

## V.
## Statement of Background Facts

**A.    Mr. Landrum's application process with HCEC.**

Mr. Landrum applied for work with Harris County Emergency Corps ("HCEC") on October 26, 2013, by completing HCEC's online employment application.[1] Following completion of his employment application, Mr. Landrum periodically inquired about HCEC's decision of whether they would offer employment to him.[2]

On December 2, 2013, HCEC asked that Mr. Landrum continue the interview process with them by taking a written test to qualify for HCEC's paramedic and 'event medics' positions.[3]  On December 4, 2013, as instructed, Mr. Landrum successfully completed the test required by HCEC.[4]

On December 16, 2013, HCEC informed Mr. Landrum of its decision not to hire him.[5] At no time subsequent to Mr. Landrum's application for employment with HCEC on October 26, 2013, did HCEC supply to him a copy of his consumer background report or "A Summary of Your Rights Under the Fair Credit Reporting Act" form, both clearly delineated statutory requirements at 15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).[6]  As a result, Mr. Landrum was deprived

---

[1] See Exhibit – A, ¶3.
[2] *Id*, at ¶4.
[3] *Id*, at ¶5.
[4] *Id*.
[5] *Id*, at ¶6.
[6] *Id*, at ¶7.

of any opportunity to review the information in the report and to discuss it with HCEC before the company decided on December 16, 2013 not to hire him.[7]  Instead of HCEC promptly (and timely) giving Mr. Landrum a copy of his consumer background report, Mr. Landrum was left to seek it from Integrated Screening Partners, the consumer reporting agency HCEC used to purchase the report.[8]

HCEC's President, Mr. Jeremy Hyde, or any other employee of HCEC with whom Mr. Landrum interacted, was not forthcoming about sharing Mr. Landrum's criminal background report with him.[9]  Similarly, Mr. Landrum does not believe that he was clearly informed about his rights pertaining to the criminal background report HCEC obtained on him.[10]

**B.    HCEC has utilized the identical application process for all members of the proposed Background Check Class.**

Defendant has revealed in discovery that during the relevant period, it procured criminal background reports on 354 individuals.

Further, in its motion for partial summary judgment, Defendant concedes that the job application process, including the online job application steps and the subsequent use of HCEC's "Background Check Form" were used not just during HCEC's consideration of hiring Mr. Landrum, but also during HCEC's consideration of hiring all members of the "Background Check Class" during the relevant five-year look-back period covering the statute of limitations of this class litigation.[11]  As such, all pertinent willful violations HCEC committed as to Mr. Landrum, it committed equally and repeatedly when it ordered criminal background reports on the 354 individuals comprising the "Background Check Class".

---

[7] *Id*, at ¶8.
[8] *Id*, at ¶9.
[9] *Id*, at ¶10.
[10] *Id*.
[11] Affidavit of Joseph Cataneo (Exhibit A to Defendant's motion for partial summary judgment, Docket Entry No. 12-1, pp. 3-4); and, Affidavit of Misty Thomas (Exhibit B thereto, Docket Entry No. 12-1, pp. 6-9).

## VI.
## Argument and Authorities

**A.**     **Summary judgment standard.**

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*.  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005)*.  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)* (en banc).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex, 477 U.S. at 323-24*.  All reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita, 475 U.S. at 587-88*; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 412 (5th Cir. 2003)*. Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith ex rel. Isquith v. Middle S. Utils.., 847 F.2d 186, 198-200 (5th Cir. 1988)*. The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990)*.  Summary judgment is only appropriate if the "pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Growsky v. Singing River Hospital*, 321 F.3d 503, 506 (5th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). In determining whether judgment as a matter of law is proper, all evidence in the record must be considered but not all evidence can be given weight. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133 (2000).

**B.    HCEC's inclusion of a liability release provision in the FCRA disclosure it had Landrum sign before procuring a consumer report about Landrum constituted a willful violation of 15 U.S.C. § 1681b(b)(2).**

Understandably, HCEC fails to inform the Honorable Court that Mr. Landrum was required to authorize a background report not once, but twice (each time with a defective disclosure of his statutory FCRA rights) – first when he filled out HCEC's lengthy online employment application, and second, when he was asked to sign HCEC's "Background Check Form" on December 4, 2013.

On page 4 of an 8-page online employment application, HCEC purports to include in a lengthy paragraph, in obscurely small sized font, an authorization and disclosure seeking permission to obtain Mr. Landrum's background information for HCEC's hiring decision. The paragraph reads in part as follows:

> "Authorization
> I authorize investigation of all statements contained in this application. I hereby authorize the Company to conduct an investigative consumer report on me, as defined in Public Law 91‑508, and/or the Fair Credit Reporting Act, and I understand that such a report may include information as to my character, general reputation, personal characteristics, crime history, financial condition, and mode of living. I understand that I may make a written request for the disclosure of the nature and scope of the investigation. I understand that misrepresentation or omission of fact called for herein or misrepresentation or omissions of fact provided the Company hereafter is cause for disciplinary action up to and including discharge. Further, I understand and agree that any employment which may result from this application is for no definite period, that no promise of continued employment is binding on the Company unless in writing and signed by the President of the Company and that I may, regardless of the date of payment of my wages and salary, be terminated at any time without any previous notice. If

8

employed, I further hereby authorize the Company to make deductions from my salary, wages, or other compensation in connection with any valid child support order or garnishment order, as well as the repayment of any amounts I may owe the Company at any time during such employment.

Authorization *

I Understand and Agree to the Above Terms and Conditions

Authorization for Release of Personal Record Information

To whom it may concern:
I have read the above "Notice to Applicants/Employees Regarding Consumer Reports" and hereby authorize the company to obtain consumer reports and/or investigative consumer reports as described.

I understand that I have the right to make a written request within a reasonable amount of time to receive additional, detailed information about the nature and scope of any investigative report or other consumer reports that are made, including the name, address and telephone number of the consumer reporting agency.

I hereby authorize and request any present or former employer, school, police department, financial institution, division of motor vehicles, consumer reporting agencies, or other persons or agencies having knowledge about me to furnish bearer with any and all information in their possession regarding me, in order that my employment qualifications may be evaluated. I hold said persons and/or organizations blameless and without liability for statements or opinions made regarding my character, experience or qualifications. I am willing that a photocopy of this authorization be accepted with the same authority as the original.

Acknowledgement
I hereby acknowledge that I have read the above statement and have understood it." [12]

Similarly, on page 2 of a 3-page 'Employment Background Check Authorization Form', HCEC purports to include in a lengthy paragraph, in obscurely small sized font, an authorization seeking permission to obtain Mr. Landrum's background information for HCEC's hiring decision. That paragraph in part reads as follows:

"I understand that HCEC will conduct a pre-employment and annual background and reference check, which will include a review of public records (i.e. driving records), my criminal history, my credit history and inquiries of my references and former employers.

---

[12] See Exhibit – B, page 4.

I hereby authorize HCEC to conduct this background check as part of my application or promotion process.

My digital signature below hereby authorizes HCEC to disclose pertinent information as requested below to other agencies or firms, as may be necessary, for the purpose of obtaining records related to this background screening check, including, but not limited to, driving records, criminal conviction records and credit reports.

Further, on behalf of myself and my heirs, assignees, and personal representatives, I hereby release and forever discharge Harris County Emergency Corps, and its employees, agents and contractors, from any and all causes of action, liability, claim, loss, cost, or expense, and promise not to sue on any such claims against any such person or organization, arising directly or indirectly from or attributable in any legal way to this background check.

I also hereby release and forever discharge any individual, agency or organization providing any information about me to Harris County Emergency Corps, from any and all causes of action, liability, claim, loss, cost or expense whatsoever related to the furnishing of such information.

Pursuant to the Texas Uniform Electronic Transmissions Act, Tex. Bus. & Comm. Code Chapter 43, I understand and acknowledge that by providing a digital signature I am agreeing to the terms and conditions outlined above and am expressing my intent to sign this Agreement.

Signature *

Example: John A Doe

Date *" [13]

To confuse Mr. Landrum further, HCEC also asked him to sign HCEC's "Background Check Form" on December 4, 2013.  This form reads in part as follows:

"I understand that HCEC will conduct a pre-employment and annual background and reference check, which will include a review of public records (i.e. driving records, List of Excluded Individuals and Entities), my criminal history, my credit history and inquiries of my references and former employers. I hereby authorize HCEC to conduct this background check as part of my application or employment process. My signature below hereby authorizes HCEC to disclose pertinent information as requested below to agencies or firms, as may be necessary, for the purpose of obtaining records related to this background screening check, including, but not limited to, driving record, List of Excluded Individuals and Entities (Medicare Exclusion List), criminal conviction records

---

[13] See Exhibit – C, page 2.

and credit reports. Further, on behalf of myself and my heirs, assignees, and personal representatives, I hereby release and forever discharge Harris County Emergency Corps, and its employees, agents and contractors, from any and all causes of action, liability, claim, loss, cost, or expense, and promise not to sue on any such claims against any such person or organization, arising directly or indirectly from or attributable in any legal way to this background check. I also hereby release and forever discharge any individual, agency or organization providing any information about me to Harris County Emergency Corps, from any and all causes of action, liability, claim, loss, cost or expense whatsoever related to the furnishing of such information." [14]

In these above paragraphs, HCEC sought from Mr. Landrum authorization to investigate his background information contained in his employment application. Such background information falls squarely under the FCRA's definition of a "consumer report". [15]

For reasons discussed below, HCEC's background investigation authorizations and disclosures contained in its online job application willfully violate the FCRA's specific disclosure and authorization requirements. For the same and additional wrongful reasons, Defendant's Exhibit B to its motion for partial summary judgment, Docket Entry No. 12-1, p. 9, entitled "Background Check Form" also willfully violates 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

First, these multitudes of disclosures (confusing and complicated as they are) impermissibly seek Mr. Landrum to waive the very rights afforded to him under the FCRA.  For instance, HCEC's "Background Check Form" form requires, among other things, that: **"Further, on behalf of myself and my heirs, assignees, and personal representatives, I hereby release and forever discharge Harris County Emergency Corps, and its employees, agents and contractors, from any and all causes of action, liability, claim, loss, cost, or expense, and**

---

[14] Affidavit of Misty Thomas (Exhibit B to Defendant's motion for partial summary judgment, Docket Entry No. 12-1, p. 9).

[15] 15 U.S.C. § 1681a(d)(1) defines a "consumer report" broadly, as follows: "The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for … (B) employment purposes; … ."  Furthermore, "employment purposes" is defined at 15 U.S.C. § 1681a(h) as follows: "The term "employment purposes" when used in connection with a

**promise not to sue on any such claims against any such person or organization, arising directly or indirectly from or attributable in any legal way to this background check. I also hereby release and forever discharge any individual, agency or organization providing any information about me to Harris County Emergency Corps, from any and all causes of action, liability, claim, loss, cost or expense whatsoever related to the furnishing of such information."**

Similarly, the online employment application is riddled with legalese and seeks impermissible liability releases as follows: "I hold said persons and/or organizations blameless and without liability for statements or opinions made regarding my character, experience or qualifications." and, "Further, on behalf of myself and my heirs, assignees, and personal representatives, I hereby release and forever discharge Harris County Emergency Corps, and its employees, agents and contractors, from any and all causes of action, liability, claim, loss, cost, or expense, and promise not to sue on any such claims against any such person or organization, arising directly or indirectly from or attributable in any legal way to this background check. I also hereby release and forever discharge any individual, agency or organization providing any information about me to Harris County Emergency Corps, from any and all causes of action, liability, claim, loss, cost or expense whatsoever related to the furnishing of such information."

Second, the disclosures repeatedly notify Mr. Landrum, incorrectly, that he must request, in writing, from HCEC the results of his background investigation, instead of simply informing him that he is automatically entitled to receive a copy of his background report from HCEC within a strict statutory timeframe (i.e., "I understand that I may make a written request for the disclosure of the nature and scope of the investigation"; and, "I understand that I have the right to

---

consumer report means a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee."

make a written request within a reasonable amount of time to receive additional, detailed information about the nature and scope of any investigative report or other consumer reports that are made, including the name, address and telephone number of the consumer reporting agency.").

And third, the disclosures contain impermissible extraneous language in addition to the liability releases: "I understand that misrepresentation or omission of fact called for herein or misrepresentation or omissions of fact provided the Company hereafter is cause for disciplinary action up to and including discharge."; and, "Further, I understand and agree that any employment which may result from this application is for no definite period, that no promise of continued employment is binding on the Company unless in writing and signed by the President of the Company and that I may, regardless of the date of payment of my wages and salary, be terminated at any time without any previous notice."; and, "If employed, I further hereby authorize the Company to make deductions from my salary, wages, or other compensation in connection with any valid child support order or garnishment order, as well as the repayment of any amounts I may owe the Company at any time during such employment."

Indeed, not just Mr. Landrum, but any reasonable person, would have been thoroughly confused with HCEC's above disclosures.  Surely, when Congress specifically iterated that the FCRA disclosure must be "in a document that consists solely of the disclosure", it could not have allowed what HCEC considers appropriate. HCEC's aloof view of the FCRA is further evidenced by the fact that it never gave Mr. Landrum (or any other job applicant) either a copy of his or her background report or a Summary of the FCRA Rights form.  Congress did not make these requirements optional.

1.      **A person may not procure a consumer report for employment purposes unless a clear and conspicuous disclosure has been made in writing to the consumer before the report is procured "in a document that consists solely of the disclosure."**

15 U.S.C. § 1681b(b) regulates the conduct of "persons" who furnish, use or procure a "consumer report" for employment purposes:

(b)      Conditions for furnishing and using consumer reports for employment purposes

    (1)      Certification from user – A consumer reporting agency may furnish a consumer report for employment purposes only if –

        (A)      the person who obtains such report from the agency certifies to the agency that –

           (i)      the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

           (ii)      information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and

        (B)      the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

    (2)      Disclosure to consumer

        (A)      In general.
        Except as provided in subparagraph (B), *a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer*, unless –

           (i)      <u>a clear and conspicuous disclosure has been made in writing to the consumer</u> at any time before the report is procured or caused to be procured, ***<u>in a document that consists solely of the disclosure</u>***, that a consumer report may be obtained for employment purposes; and

           (ii)      the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person . . . .

15 U.S.C. § 1681b(b).  [Emphasis supplied].

2.   **HCEC violated 15 U.S.C. § 1681b(b)(2) by including liability release provisions in the multitude of disclosures HCEC provided to Landrum.**

Each document authorizing procurement of a consumer report concerning Mr. Landrum was not a document ***"that consists solely of the disclosure"*** because each contained a release of his rights under the FCRA.  HCEC thus cannot dispute it violated 15 U.S.C. § 1681b(b)(2) when it procured a consumer report regarding Mr. Landrum for employment purposes without making the required disclosure ***"in a document that consists solely of the disclosure"*** by using disclosure and authorization forms to obtain a liability release from Plaintiff.

3.   **Landrum's allegations of willfulness.**

Mr. Landrum only seeks statutory damages for HCEC's violations, which are recoverable only when a violation is "willful." 15 U.S.C. § 1681n.[16]  In Mr. Landrum's Original Complaint (Docket Entry No. 1), he alleges facts demonstrating HCEC's willfulness.  Mr. Landrum also includes citations to several preexisting FTC opinion letters unequivocally requiring that when the consumer report was procured in this case, all applicable legal authority had concluded that the addition of language other than the actual "authorization" in a disclosure form violated the express language of 15 U.S.C. § 1681b(b)(2).

That Mr. Landrum's allegations adequately support a finding of willfulness is supported by the Court's decision in *Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3. In *Avila*, the Court denied a defendant's motion to dismiss in which the plaintiff, like Mr. Landrum, had alleged a violation of 15 U.S.C. § 1681b(b)(2) based on the

---

[16] 15 U.S.C. § 1681n provides, in part: Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –

    (1)(A)    any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .

    (2)    such amount of punitive damages as the court may allow; and

    (3)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

inclusion of a liability release. The Court found plaintiff's allegations of willfulness sufficient to

withstand a motion to dismiss. The Court reasoned:

> "This section also contains a liability release for any damage Avila may experience as a result of the disclosure of information about him to NOW Foods, as well as a paragraph indicating that he is an at-will employee who can be terminated at any time with or without cause and that a deliberate misstatement on the application will result in his immediate dismissal. In the final paragraph of this section, Avila agrees to comply with all company rules, policies and procedures. As to the Background Report Authorization Form, it states that "I hereby authorize NOW Health Group, Inc., Argus Services, Inc. and their agents to obtain and review the 'consumer report' or 'investigative consumer report' on me described in the [FCRA Statement]." The form, however, also contains a release of liability for claims that Avila might have arising from the consumer report and any information contained in it.
>
> **Thus, despite NOW's assertion that both forms comply with the FCRA stand-alone disclosure requirement, each form contains information that is not the disclosure, contrary to the express language of the FCRA, which requires a disclosure "in a document that consists solely of the disclosure."** . . . At the motion to dismiss stage, where all inferences are made in favor of the nonmovant, the Court is unwilling to conclude that Avila has not stated a claim. Finally, NOW asserts that Avila has not and cannot allege willfulness, which he must do since he has not alleged actual damages.
>
> Avila seeks statutory damages, which are available only for willful violations of the FCRA. *Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir. 2008). The Supreme Court has stated that willful "means recklessness—something more than negligence but less than knowledge of the law's requirements." *Id.* at 726. Specifically, the Supreme Court stated that: a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).
>
> However, state of mind may be alleged generally. Fed.R.Civ.P. 9(b). **Further, it is reasonably inferred that NOW was aware of its disclosure requirement under the FCRA based on the statement in the Background Report Authorization Form.** Avila alleges that NOW willfully breached the FCRA because it "violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)" and that its conduct is "contrary to long-standing regulatory guidance and caselaw." (FAC, Dkt. # 36 ¶41.) *These allegations are sufficient to allege a knowing or reckless violation of the FCRA*, which are required for a finding of willfulness. *Lavery v. RadioShack Corp.,* 13 C 5818, 2014 WL 2819037, at *2 (N.D.Ill. June 23, 2014) (allegations that amendment to FCRA gave merchants three years to comply with new requirements, which were widely publicized, and merchants were advised by credit card companies of the requirements were sufficient to allege willfulness)." [Emphasis supplied].

Under facts very similar to *Avila*, Mr. Landrum sufficiently demonstrates that HCEC had ample knowledge of the FCRA's straightforward disclosure requirements, yet it recklessly violated those requirements.

**4.      The express statutory language of 15 U.S.C. § 1681b(b)(2) demonstrates that any interpretation that such section permits the inclusion of liability waiver and release provisions in a disclosure form is "objectively unreasonable".**

To the extent HCEC contends that inclusion of the waiver and release language in its disclosure and authorization forms did not violate the provisions of 15 U.S.C. § 1681b(b)(2)(A), such interpretation of 15 U.S.C. § 1681b(b)(2)(A) is objectively unreasonable, and therefore constitutes a "willful" violation.  Indeed, the language of 15 U.S.C. § 1681b(b)(2)(A) is plain and clearly ascertainable.  According to 15 U.S.C. § 1681b(b)(2)(A), the disclosure must be "clear and conspicuous" and set forth "in a document that consists solely of the disclosure," with the sole exception that the required written "authorization may be made on the [same] document." 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

HCEC could have possessed no objectively reasonable belief that it had a right or obligation to obtain a liability release from the consumer.  In fact, doing so in a disclosure form directly conflicted with the FCRA's clear prohibition on an employer's inclusion of any additional provision, excluding the authorization itself, in the disclosure form.

The statutory text of 15 U.S.C. § 1681b(b)(2)(A) is unambiguous and not susceptible of differing interpretations. HCEC's authorization forms do not derive their content from the pertinent statutory text. There is simply nothing in the statutory text that would validate a claim that it was proper to include a waiver of rights provision, even one narrowly tailored to HCEC's procurement of the applicant's authorization for the consumer report, in a disclosure form. The statute itself cuts exactly the other way.

17

Further, an FTC opinion letter from 1998 addresses the sufficiency of a combined disclosure and authorization form containing a waiver of FCRA rights.[17] The Letter states that: "While we believe that you may combine the disclosure and authorization ..., we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. **The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes**. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), ("Hauxwell FTC Letter")." (*Reardon v. ClosetMaid Corp.* (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730) 2013 WL 6231606.) [Emphasis supplied].[18]

Additionally, an FTC opinion letter from 1997 explains that: "The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure ... will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. *However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report*. (Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch

---

[17] Although the FTC's Opinion Letters are not binding on the Honorable Court, it is a "general proposition that considerable respect is due 'the interpretation given [a] ... statute by the officers or agency charged with its administration,'" *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 556 [100 S.Ct. 790, 63 L.Ed.2d 22] (1980).

[18] See attached **Exhibit – D**, copy of the Hauxwell FTC Letter; see same at Docket Entry No. 1-5.

Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.) ("Steer FTC Letter").[19] [Emphasis supplied].

Also, HCEC's waiver and release verbiage in the authorization is not an "authorization," which is the only other provision the FCRA allows in a valid disclosure form. To hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not a great distraction" safe harbor for impermissible language, which, of course, is within the purview solely of Congress, and not of the Court.

Additionally, the *Burghy v. Dayton Racquet Club, Inc.,* 695 F.Supp.2d 689 (S.D. Ohio 2010) opinion that HCEC attempts to rely upon in its motion for partial summary judgment fails to support any claim that it was objectively reasonable for HCEC to believe the inclusion of a liability release in the disclosure form did not violate 15 U.S.C. § 1681b(b)(2).[20] The *Burghy* case did not involve the inclusion of a liability release in a disclosure form. In *Burghy*, the plaintiff acknowledged that she had signed a disclosure form purporting to authorize her employer to obtain her consumer report, but contended that the form did not clearly and conspicuously disclose that it could be used for employment purposes. The plaintiff purported to identify two deficiencies in the disclosure form: 1) that it uses the same style of text throughout, without contrasting any portion with text of a different size or color, and 2) that it "buries" the relevant disclosure in a "laundry list" of other information that the form authorizes the Defendants to obtain. *Burghy v. Dayton Racquet Club, Inc.*, 695 F.Supp.2d 689, 697 (S.D. Ohio 2010). As the Court noted in *Burghy*:

> The FCRA does demand that the revelation that a consumer report may be obtained for employment purposes be made "in a document that consists solely of [that] disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Thus, one reading of Plaintiff's argument might be that including the explanatory language of the other

---

[19] See attached **Exhibit – E**, copy of the Steer FTC Letter.
[20] See attached **Exhibit – F**, *Burghy v. Dayton Racquet Club, Inc*., 695 F.Supp.2d 689 (S.D. Ohio 2010).

paragraphs alongside the bullet points means that the document does not consist solely of the disclosure that a consumer report may be obtained for employment purposes. This argument is also unpersuasive, if it is, in fact, what Plaintiff means to convey. The Act specifically states that the language *authorizing* the employer to obtain a consumer report (the first and second paragraphs) may be included alongside the language disclosing that such a report may be used for employment purposes (the bullet points). 15 U.S.C. § 1681b(b)(2)(A)(ii) ("[an employer may obtain a consumer report if] the consumer has authorized in writing (*which authorization may be made on the document referred to in clause (i)*) the procurement of the report by that person.") [Emphasis supplied]. Including the explanatory language alongside the disclosure language is logical, given their relationship, and the Court cannot conclude that the presence of the former renders the latter inconspicuous. *See Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir.2000) ("[we must interpret] all statutes ... 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' ") (quoting *Lake Cumberland Trust, Inc. v. EPA*, 954 F.2d 1218, 1222 (6th Cir.1992)).

Similarly, the Court's decision in *Smith v. Waverly Partners, LLC,* 2012 WL 3645324 (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV) that HCEC also attempts to rely upon does not support HCEC's position.[21] There, the Court acknowledged that an FTC opinion letter specifically found "a waiver by the consumer of his or her rights under the FCRA" to be in violation of the FCRA in light of 15 U.S.C. § 1681b(b)(2)(A)'s inclusion of the term "solely." In *Smith,* the Court expressly found that "**inclusion of the waiver provision was statutorily impermissible.**", the very opposite of what Defendants attempt to advocate.

As discussed previously, in *Avila v. NOW Health Group, Inc.,* 2014 WL 3537825 at *2-3 (N.D. Ill., July 17, 2014, 14 C 1551), the Court denied a motion to dismiss in which the plaintiff had alleged a willful violation of 15 U.S.C. § 1681b(b)(2) based on the inclusion of a liability release. The *Avila* Court also found allegations of willfulness were sufficient to withstand a motion to dismiss.

---

[21] See attached **Exhibit – G**, *Smith v. Waverly Partners, LLC*, 2012 WL 3645324 (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV).

Given the unambiguous language of the FCRA's disclosure and authorization requirements, coupled with the case law and FTC opinion letters existing prior to HCEC's willful actions, HCEC knew or should have known of its legal obligations under the FCRA.

HCEC obtained, or had available, substantial written materials that appraised it of its duties under the FCRA. Any reasonable employer or consumer reporting agency knows about or can easily discover these obligations, which are not by any measure complex.  Perhaps costly to properly administer, but not complex. HCEC either knew or recklessly failed to know the disclosure requirements of 15 U.S.C. § 1681b(b)(2), and it similarly knew or recklessly failed to know that using a disclosure form that included a liability release was facially contrary to the express language of 15 U.S.C. § 1681b(b)(2) and to all of the administrative guidance and case law available at the time it violated the law. Despite having knowledge of its legal obligations, HCEC intentionally, or recklessly, breached its duties and deprived Plaintiff and other Class members their rights under the FCRA.

Defendant's motivation to include the release language in the disclosure form likely occurred in order to preemptively and prospectively discourage and deceive employees about their rights to bring claims against HCEC for wrongfully obtained and wrongfully used consumer report information. Despite knowing that the release language was statutorily prohibited, HCEC recklessly, and even intentionally, included the release language in its standardized disclosure forms.

Plaintiff taxes no one's imagination in stating that Congress clearly sought to restrict the disclosure requirement of 15 U.S.C. § 1681b(b)(2)(A)(i)(ii) with the word "solely." Other

statutory disclosures, such as those contained in 15 U.S.C. § 1681d and 15 U.S.C. § 1681s-3 do

not require the disclosures to consist "solely" of the disclosure.[22]

Congress' use of the term "solely" has to mean something. Indeed, the law is clear that

"'[W]here Congress includes particular language in one section of a statute but omits it in

another section of the same Act, it is generally presumed that Congress acts intentionally and

purposely in the disparate inclusion or exclusion.'" *Russello v. U.S.* 464 U.S. 16, 23 (1983).

HCEC, however, would have the Honorable Court believe that use of the word "solely" is

surplusage that has no meaning. This is contrary to well-established principles of statutory

construction. The U.S. Supreme Court held in *Duncan v. Walker*, 533 U.S. 167, 174 (2001):

> "It is our duty 'to give effect, if possible, to every clause and word of a statute.'"
> *United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615
> (1955) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed.
> 431 (1883)); see also *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146
> L.Ed.2d 389 (2000) (describing this rule as a "cardinal principle of statutory
> construction"); *Market Co. v. Hoffman,* 101 U.S. 112, 115, 25 L.Ed. 782 (1879)
> ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought,
> upon the whole, to be so construed that, if it can be prevented, no clause,
> sentence, or word shall be superfluous, void, or insignificant' "). We are thus
> "reluctan[t] to treat statutory terms as surplusage" in any setting.

If Congress had intended 15 U.S.C. § 1681b(b)(2) to allow a disclosure document to

include additional language so long as such language did not distract from the disclosures set

forth in the document, it could have done so.  Instead, Congress used the term "solely", and it is

---

[22] 15 U.S.C. § 1681(d) only requires the disclosure to "clearly and accurately" disclose ... not later than three days after the date the report was first requested. Likewise, 15 U.S.C. § 1681s-3, with an effective date of December 4, 2003, does not require the disclosure to consist "solely" of the disclosure. Rather, 15 U.S.C. § 1681s-3(a) simply calls the disclosure to be "clearly and conspicuously disclosed" and further allows the non-1681b disclosure to be coordinated or combined with any other notice required under 15 U.S.C. § 1681s-3 or together with other disclosures required to be issued by persons subject to 15 U.S.C. § 1681s-3. While the affiliate disclosure in 15 U.S.C. § 1681s-3 is not technically a 1681b "Consumer Report," it is because of that reason that Congress' intent to require a 1681b "Consumer Report" disclosure to consist "solely of the disclosure" can be presumed intentional and purposeful.

objectively unreasonable for HCEC to presume that use of "solely" means anything else, or that the term can conveniently be ignored at its behest.

5.    **Congress' express adoption of the "authorization" exception to the "consisting solely of the disclosure" requirement in response to FTC advisory opinions demonstrates that the inclusion of liability release and waiver provisions in a disclosure form is clearly statutorily impermissible.**

15 U.S.C. § 1681b(b)(2)(ii) expressly allows an authorization to be made in the same document as the "disclosure"; however, it does not follow that the statute also allows a disclosure to include a liability release provision, a matter on which the statute is distinctly silent.  To interpret otherwise effectively renders the "consisting solely of the disclosure" language superfluous in direct contravention of a fundamental principle of statutory construction. Moreover, Congress, in the Consumer Reporting Employment Clarification Act of 1998, specifically identified the *only* exception to the requirement that the requisite "disclosure" must be "in a document that consists solely of the disclosure." In the amendment, Congress allowed the written authorization to be made on the same document as the disclosure: "(ii) the consumer has authorized in writing (*which authorization may be made on the document referred to in clause (i)*) the procurement of the report by that person." [Emphasis supplied]

"Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 [100 S.Ct. 1905, 1910, 64 L.Ed.2d 548] (1980). The well-established doctrine of *expressio unius est exclusio alterius* in statutory construction applies in this case.[23]

---

[23] The doctrine of *expressio unius est exclusio alterius* "as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Boudette v. Barnette,* 923 F.2d 754, 756–57 (9th Cir.1991).

"First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter. . ." (*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 [104 S.Ct. 2778, 2781, 81 L.Ed.2d 694] (1984)).  As the Court held in *U.S. v. Locke,* 471 U.S. 84, 95 (1985):

> "Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result. On the contrary, deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that the legislative purpose is expressed by the ordinary meaning of the words used. (Internal citations and quotations omitted.)."

Thus, had Congress intended to allow employers to include additional provisions in the disclosure document other than information it expressly authorized (i.e., the authorization), it could easily have included language to that effect in the statute. It did not do so, however, and its "silence is controlling." *See Smith v. Under Armour, Inc.*, 593 F.Supp.2d 1281, 1287 (S.D. Fla. 2008) (finding Congress' failure to include language regarding e-commerce in one FCRA section instructive in determining whether that section applied to e-commerce).

HCEC cannot credibly argue that the term "solely" is ambiguous or open to varying interpretations. Here, Congress authorized a specific exception to the "consisting solely of" requirement. To conclude such a specific and limited exception as allowing an interpretation that would essentially eviscerate the "consisting solely of" requirement of 15 U.S.C. § 1681b(b)(2) by allowing release and indemnity provisions and other "non-disclosure" provisions has no basis in logic or applicable principles of statutory construction.

Therefore, because Defendant's disclosures contain extraneous items that cannot pass muster given Congress' clearly delineated intent, Defendant stands in violation of 15 U.S.C. § 1681b(b)(2). Defendant was objectively unreasonable then, and is no less objectively

unreasonable now in asking the Court to look the other way in light of the repeated and numerous reckless violations of the FCRA.

**6.    The lack of Circuit Court authority on the issue does not insulate HCEC from liability.**

The fact that neither the Fifth Circuit nor any other Circuit court has ruled on the legality of a liability release provision included in a disclosure form by no means establishes that the issue is "uncertain." One need only look to the express language of the statute and to the FTC opinion letters to know the inclusion of such language is "statutorily impermissible."  This is simply not a case where the statutory language is "less-than-pellucid," or where there has been no guidance from the FTC.[24]

On the contrary, HCEC had ample guidance that counseled it to exclude the liability release from its FCRA disclosure forms, yet it continued to willfully violate the statute by including it, in a manner that was objectively unreasonable.

---

[24] Thus, the Supreme Court's decision in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 [127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045] (2007) (**Exhibit – H**) is factually inapposite on the issue of HCEC's willfulness.  In *Safeco*, the issue before the Court was as follows: <u>Since the late 1990's, insurance companies have used consumer credit reports to set various types of insurance premiums. FCRA requires an insurer that uses a consumer's credit report to notify the consumer whenever an "adverse action" occurs based in whole or in part on any information contained in the consumer credit report. 15 U.S.C. § 1681m(a). An adverse action is defined as "a denial or cancellation of" or "an increase in any charge for" insurance. 15 U.S.C. § 1681a(k)(1)(B)(i). Consumer class action litigation arose over whether FCRA adverse action notices are required in connection with the initial purchase of insurance. Some insurers took the position that they need not send FCRA notices to initial purchasers of insurance because there is no "denial" "cancellation" or "increase in any charge" for insurance in that context. Others provided adverse action notices to initial applicants where the substitution of a neutral credit score for that consumer's actual score would have resulted in a lower rate or more favorable terms and conditions in an insurance policy. Insurance consumer plaintiffs challenged both approaches, arguing the FCRA requires notice to all applicants who receive anything but the lowest rates as a consequence of their credit report, and that the failure to give such notice constitutes a willful violation of FRCA</u>.  In response, the Court held: "This is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took. Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC. Given this dearth of guidance and ***the less-than-pellucid statutory text***, Safeco's reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability." [Emphasis supplied]. As such, *Safeco* did not address the simple issue of including a liability release in an FCRA disclosure, an issue that incidentally *has had* considerable analysis both from the FTC and the courts; instead, *Safeco* dealt with a much more complex question that had not been litigated or analyzed before, and as a result, became the seminal case defining the term "willful" under the FCRA more expansively than before by including in its definition not just knowing violations, but also reckless ones.

## VII.
## Conclusion and Prayer

FOR THESE REASONS, Class Plaintiff Jeffrey K. Landrum prays that Defendant's

motion for partial summary judgment be denied.

Plaintiff attaches a proposed Order.

Respectfully submitted,

**ALI  S. AHMED, P.C.**

By:   /s/ Salar Ali Ahmed
**Salar Ali Ahmed**
Federal Id. No. 32323
State Bar No. 24000342
One Arena Place
7322 Southwest Freeway, Suite 1920
Houston, Texas 77074
Telephone:   (713) 223-1300
Facsimile:   (713) 255-0013
aahmedlaw@gmail.com

**Attorney for Plaintiff**
**Jeffery K. Landrum, and**
**Members of the Putative Classes**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 11, 2015, a true and correct copy of the
foregoing was served on the below-listed counsel of record as follows:

*(Via ECF Electronic Filing System for the District Courts of the Southern District of Texas)*
Mr. Phillip W. Bechter
VORYS, SATER, SEYMOUR AND PEASE, LLP
700 Louisiana Street, Suite 4100
Houston, Texas 77002

/s/ Salar Ali Ahmed
**Salar Ali Ahmed**

26

## <u>TABLE OF EXHIBITS</u>

Exhibit – A:   Plaintiff Jeffrey K. Landrum's Sworn Declaration
(and attachments: Exhibits 1, 2, 3 and 4)

Exhibit – B:   HCEC's online employment application

Exhibit – C:   HCEC's "Employment Background Check Authorization Form"
(required by HCEC's with its online employment application)

Exhibit – D:   Hauxwell FTC Letter

Exhibit – E:   Steer FTC Letter

Exhibit – F:   *Burghy v. Dayton Racquet Club, Inc.*, 695 F.Supp.2d 689 (S.D. Ohio 2010)

Exhibit – G:   *Smith v. Waverly Partners, LLC*, 2012 WL 3645324 (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV)

Exhibit – H:   *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 [127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045] (2007)