UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFREY K. LANDRUM, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-1811 |
| | § | |
| HARRIS COUNTY EMERGENCY CORPS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.        INTRODUCTION**

The plaintiff, Jeffrey K. Landrum ("Landrum"), brings this putative class action lawsuit against the defendant, Harris County Emergency Corps ("HCEC"), under the Fair Credit Reporting Act ("FCRA" or the "Act"), 15 U.S.C. § 1681, *et seq.* The complaint alleges that HCEC violated the Act by obtaining consumer reports on job applicants and employees of the company without first complying with the statute's notice requirements, then using those reports to make adverse employment decisions. HCEC moves for summary judgment on Counts 2 and 3, raising the following questions of first impression in this Circuit: (1) whether including a waiver of rights provision in an FCRA-regulated disclosure document violates clause (i) of § 1681b(b)(2)(A)(i)–(ii), and if so, (2) whether such a violation is willful. The Court concludes that the added waiver violates the statute, but that a willful violation did not occur in this case. Accordingly, HCEC's motion is GRANTED.

**II.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The material facts are undisputed. HCEC is a not-for-profit emergency medical service provider. As a condition of employment, HCEC requires a job applicant to complete paperwork authorizing it to conduct a pre-employment background check. HCEC uses the results of the

check to assess fitness for employment.

Landrum began applying for various HCEC positions as early as September 2013. According to the complaint, HCEC asked him to sign two background check authorization forms as part of its online application.  The first form was part of an eight-page document entitled "Employment Application."  The second was part of a three-page document entitled "Employee Background Check Authorization Form."  Landrum signed and submitted both forms.  The record also shows—and Landrum has since acknowledged—that on December 4, 2013, after Landrum had completed several online applications and a qualifying exam, HCEC emailed him a one-page "Background Check Form" containing the following text:

> *I understand that HCEC will conduct a pre-employment and annual background and reference check, which will include a review of public records (i.e. driving records, List of Excluded Individuals and Entities), my criminal history, my credit history and inquiries of my references and former employers. I hereby authorize HCEC to conduct this background check as part of my application or employment process. My signature below hereby authorizes HCEC to disclose pertinent information as requested below to agencies or firms, as may be necessary, for the purpose of obtaining records related to this background screening check, including, but not limited to, driving record, List of Excluded Individuals and Entities (Medicare Exclusion List), criminal conviction records and credit reports.  Further, on behalf of myself and my heirs, assignees, and personal representatives, I hereby release and forever discharge Harris County Emergency Corps, and its employees, agents and contractors, from any and all causes of action, liability, claim, loss, cost, or expense, and promise not to sue on any such claims against any such person or organization, arising directly or indirectly from or attributable in any legal way to this background check. I also hereby release and forever discharge any individual, agency or organization providing any information about me to Harris County Emergency Corps, from any and all causes of action, liability, claim, loss, cost or expense whatsoever related to the furnishing of such information.*

(italics in original).  There is no dispute that Landrum signed this form and that HCEC used it to order a background check on him.  The check revealed that Landrum had been charged with and convicted of several crimes.  After reviewing this report, HCEC denied Landrum's application on December 16, 2013.

On June 6, 2014, Landrum filed a three-count class action complaint against HCEC on behalf of job applicants and employees who were the subject of a consumer report procured by the company. The first class—the "Adverse Action Class"—covers individuals who did not receive from HCEC (on or after November 7, 2008) a copy of their consumer report before being disqualified from employment. Count 1 alleges that HCEC violated § 1681b(b)(3)(A)(i) of the Act by failing to furnish class members with a copy of their report. The second class—the "Background Check Class"—covers individuals who executed a disclosure and authorization form (on or after November 7, 2008) permitting HCEC to obtain a consumer report as a condition of employment. With respect to this class: Count 2 alleges that HCEC failed to comply with § 1681b(b)(2)(A)(i)'s formatting requirements for disclosing that a consumer report might be obtained, and Count 3 asserts that HCEC procured the reports without proper authorization under § 1681b(b)(2)(A)(ii). Landrum claims that these violations were willful, triggering an award of statutory and punitive damages, attorney's fees and costs under § 1681n(a). Having answered the complaint, HCEC now moves for summary judgment on Counts 2 and 3 as to all individuals in the Background Check Class.

### III. CONTENTIONS OF THE PARTIES

HCEC contends that its Background Check Form complies with the FCRA's basic requirements under § 1681b(b)(2)(A)(i)–(ii): it is a single, one-page document that (1) contains a clear and conspicuous disclosure that a background check will be performed, and (2) obtains the necessary authorization to conduct the check. Insofar as the form contains a liability waiver or release, HCEC argues that its inclusion does nothing to violate clause (i)'s requirement that the form "consist[ ] solely of the disclosure." The term "solely," it posits, has a flexible, not "hypertechnical," meaning in light of clause (ii)'s permissive wording allowing an authorization

to "be made on the document referred to in clause (i)." In support of this view, HCEC relies on *Smith v. Waverly Partners, LLC*, No. 3:10-cv-00028, 2012 WL 36345324 (W.D.N.C. Aug. 23, 2012), *Syed v. M-I LLC*, No. 1:14-742, 2014 WL 5426862 (E.D. Cal. Oct. 23, 2014), and model FCRA disclosure forms set forth in a 2013 employment treatise.[1] Because the issue presents an open question in the Fifth Circuit, HCEC urges the Court to adopt the view of these authorities and not those that take a contrary position.

Alternatively, HCEC argues that even if the Court finds that it violated the FCRA, Landrum cannot establish that the violation was willful, a requirement for recovering statutory and punitive damages. Citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), HCEC maintains that Landrum cannot demonstrate that the decision to include the liability waiver was objectively unreasonable given the competing interpretations of § 1681b(b)(2)(A) at the time its disclosure form was in use.

Landrum counters that HCEC violated the plain language of § 1681b(b)(2)(A) by including the liability release in its Background Check Form.[2] He concludes that the statute is "unambiguous and not susceptible of differing interpretations" and that principles of statutory construction support a restrictive understanding of the term "solely." On the question of willfulness, Landrum argues that "HCEC had ample knowledge of the FCRA's straightforward disclosure requirements, yet it recklessly violated those requirements." He relies on *Avila v. NOW Health Group, Inc.*, No. 14 C 1551, 2014 WL 3537825 (N.D. Ill. July 17, 2014), to support this conclusion. He also cites two Federal Trade Commission ("FTC") opinion letters from 1997

---

[1] The model forms are referenced in and attached to HCEC's reply papers. Landrum did not seek leave to file a sur-reply to respond to these additional authorities and concomitant summary judgment arguments.

[2] Landrum also challenges the two forms he initially completed as part of HCEC's online application. Because the record shows that neither form was used to procure background information about Landrum, *see infra* Part V, the Court will not address contentions related to those forms.

and 1998. In his view, "[the] letters unequivocally requir[ed] that when the consumer report was procured in this case, all applicable legal authority had concluded that the addition of language other than the actual 'authorization' in a disclosure form violated the express language of 15 U.S.C. § 1681b(b)(2)."

Landrum alternatively argues that the jury should decide whether the inclusion of the liability release was objectively unreasonable because it is an issue of fact addressing "[HCEC's] behavior and state of mind at the time it committed the alleged violations."

### IV. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party that fails to make a sufficient showing of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing [the Court] of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323; *see Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the non-movant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must

'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). The non-movant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Id.* (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of*

*Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

V.     **ANALYSIS AND DISCUSSION**

It bears repeating that there is no dispute that on December 4, 2013, Landrum received and signed a one-page Background Check Form that was separate and apart from his online application. After receiving this form, HCEC used it to procure background information on him. Landrum has not argued that HCEC used any other form to obtain a consumer report on him for employment purposes. Even if he had advanced such an argument, he has not come forward with evidence to refute HCEC's affidavits on this point. In light of the undisputed facts, the Court turns to the critical legal questions raised by the pending motion: (1) whether the inclusion of a liability waiver on HCEC's Background Check Form contravenes the stand-alone disclosure requirement of § 1681b(b)(2)(A)(i) and if so, (2) whether the violation was willful as a matter of law.

A.     **Fair Credit Reporting Act**

The FCRA, enacted in 1970 and codified at 15 U.S.C. § 1681 *et seq.*, has the stated purpose of safeguarding consumers in connection with the utilization of credit. *See Safeco*, 551 U.S. 47. Congress effected this goal by limiting the release of consumer reports for certain enumerated purposes. *See* 15 U.S.C. § 1681b(a). Section 1681b(b) sets forth the conditions for furnishing and using consumer reports for employment purposes. According to one of those conditions:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless—
>
> > (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be

>procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
>(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added). Anyone who "willfully fails" to comply with FCRA requirements is civilly liable to the consumer for

>(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
>(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
>(2) such amount of punitive damages as the court may allow; and
>
>(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

### B. HCEC Violated § 1681b(b)(2)(A)(i)–(ii)

Before conducting a background check, HCEC was required to make a disclosure that complied with § 1681b(b)(2)(A). The sufficiency of HCEC's disclosure turns on the meaning of the word "solely" in clause (i) and whether including a liability waiver as part of that disclosure is consistent with that definition. Several district courts have reached varying conclusions about the word's import within the context of § 1681b(b)(2)(A). *Compare Syed*, 2014 WL 5426862, at *3 (granting motion to dismiss because clause (ii) renders "'solely' . . . more flexible than at first it may appear"), *and Smith*, 2012 WL 36345324, at *6 (upholding disclosure on summary judgment, where liability waiver was severable and "not so great a distraction as to discount the

effectiveness of the disclosure and authorization statements"), *with Avila*, 2014 WL 3537825 (denying motion to dismiss because liability release violated "express language of the FCRA"), *Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *10 (W.D. Pa. Dec. 2, 2013) (granting summary judgment for plaintiffs because liability waiver was "facially contrary" to FCRA's stand-alone disclosure requirement), *and Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) (denying motion to dismiss because "both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document").[3]  The question has not yet been addressed by a circuit court of appeal.

Principles of statutory construction lead this Court to conclude that the inclusion of a liability waiver as part of a § 1681b(b)(2)(A)-regulated disclosure violates the FCRA. "The preeminent canon of statutory interpretation requires [the Court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' " *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (citation omitted). Accordingly, "[w]hen faced with questions of statutory construction, '[the Court] must first determine whether the statutory text is plain and unambiguous' and, '[i]f it is, [the Court] must apply the statute according to its terms." *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) (citing Supreme Court cases). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.  If the statutory text is unambiguous, [the Court's] inquiry begins and ends with the text." *Id.* (internal citations and quotation marks omitted).  "In construing a statute, a court should give effect, if possible, to every word and every provision Congress used." *Id.* Yet,

---

[3] The parties also discuss *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp.2d 689, 696–700 (S.D. Ohio 2010), but that case primarily addresses "whether or not [an FCRA-regulated] disclosure was sufficiently conspicuous," not whether or not the disclosure was made "in a document that consists solely of the disclosure."

"[l]ike other canons, the antisuperfluousness canon is merely an interpretive aid, not an absolute rule." *Id.* (quoting *Corley v. United States*, 556 U.S. 303, 325 (2009) (Alito, J., dissenting)).

The Court assumes that the legislative purpose of the FCRA is "expressed by the ordinary meaning of the words used." *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005) (citing *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)) (internal quotation marks omitted). According to one dictionary, the word "solely" means "without another" and "to the exclusion of all else." *Merriam-Webster Online Dictionary* (2015), www.merriam-webster.com. Deference to this common definition, and by it the first canon of statutory construction, compels the conclusion that a disclosure meets the FCRA's stand-alone requirement when it consists of the words creating the disclosure itself, to the exclusion of all other information. HCEC's disclosure fails this test.

The Court is not persuaded by the argument that the statute's text suggests that "solely" is ambiguous or "more flexible than at first it may appear." *Syed*, 2014 WL 5426862, at *3. The defendant latches on to this understanding in part because clause (ii) allows the consumer's authorization to "be made on the document referred to in clause (i)." 15 U.S.C. § 1681b(b)(2)(A)(i)–(ii). While at least one court has found that this juxtaposition renders the statutory language "less-than-pellucid," *Syed*, 2014 WL 5426862, at *3 (internal quotation marks omitted), the Court declines to read the statute in a way that conflicts with its plain language. "Had Congress intended for employers to include additional information in these documents, it could easily have included language to that effect in the statute." *Singleton*, 2012 WL 245965, at *8.

Congress did just that when it passed the Consumer Reporting Employment Clarification Act of 1998, Pub. L. No. 105–347, § 5, 112 Stat. 3208, amending the FCRA to permit inclusion

of an authorization on the same form as the disclosure. Prior to the amendment, Congress made no such express allowance. When Congress made the affirmative choice to permit the inclusion of an authorization, it did not also open the floodgates for including other language on the disclosure form, regardless of whether the language will cause a consumer to be distracted from the disclosure's ultimate purpose. *Cf. Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). Whether extraneous language amounts to a distraction from a disclosure's purpose is not the test and to the extent that HCEC urges this Court to adopt such a standard, the invitation is rejected. "To hold otherwise would have the Court rewrite the applicable provision . . . to include a 'not a great distraction' safe harbor for impermissible language, which, of course, it may not do." *Reardon*, 2013 WL 6231606, at *9 (rejecting *Smith*, 2012 WL 36345324, at *6, where court found liability waiver was "not so great a distraction as to discount the effectiveness of the disclosure and authorization statements").

  **C. HCEC's Violation Was Not Willful**

  To recover statutory and punitive damages, as Landrum seeks in this case, a plaintiff must show that a business has willfully violated the FCRA. 15 U.S.C. § 1681n(a). The Supreme Court has held that willful violations of the Act include both intentional and reckless violations of the law. *See Safeco*, 551 U.S. at 52, 57–60. "[A] company subject to [the] FCRA does not act in reckless disregard of it unless the action . . . shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. In short, to constitute a willful violation, HCEC's interpretation of the FCRA must have been "objectively unreasonable." *Id.* at 68–70.

In *Safeco*, the Supreme Court measured objectivity by assessing whether the defendant corporation's interpretation of the FCRA "ha[d] a foundation in the statutory text" and whether it had "the benefit of guidance from the courts of appeals or the . . . FTC that might have warned it away from the view it took." *Id*. at 69–70. At the time the defendant took action against the consumer in that case, no court of appeals had addressed the statutory interpretation issue then before the Court, nor had the FTC offered "authoritative guidance" on the issue.[4] Even though the defendant took a textual position that the Court did not find convincing, the Court concluded that "[g]iven the dearth of guidance and less-than-pellucid statutory text, [the defendant's] reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.* at 70.

Applying *Safeco*, the Court finds that HCEC's reading of § 1681b(b)(2)(A) was objectively reasonable and its use of its Background Check Form not a willful violation of the FCRA. On December 4, 2013, when HCEC presented Landrum with the form and asked him to sign it, only two district courts had addressed the propriety of including a release provision as part of an FCRA-regulated disclosure. Each court reached a different conclusion. In *Smith*, 2012 WL 3645324, at *5–6, the court found that the inclusion of a one-sentence liability waiver in a 2007 disclosure was "statutorily impermissible" and not supported by the two FTC staff opinion letters submitted to buttress the plaintiff's position. The court then severed the waiver, which in its view did not distract the consumer from the overall purpose of the disclosure document, and upheld the disclosure. *Id.* at *6. By contrast, in *Reardon*, 2013 WL 6231606, at *10, the court determined that the inclusion of a liability waiver in a 2006 disclosure was "facially contrary" to the FCRA and the "administrative guidance" of three informal FTC

---

[4] The FTC "has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question." *Safeco*, 551 U.S. at 70.

opinions from 1997 and 1998 addressing the sufficiency of a disclosure-waiver combination.

These same opinion letters, which Landrum cites to buttress his position, were available in 2013. *See* Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1 ("Hauxwell FTC Letter"); Letter from Cynthia Lamb, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 ("Steer FTC Letter").[5] Also available in 2013, as HCEC points out, was an employment treatise that included liability waiver provisions in its model FCRA disclosure forms. 24A Daniel Oberdorfer & Mark A. Rothstein, *West's Legal Forms*, *Employment* §§ 1.47 ("Consumer Report Disclosure and Consent Form") & 1.48 ("Disclosure of Intent to Obtain Consumer Report") (3d ed. 2003 & Supp. 2013–2014). In light of *Smith* and *Reardon*, the cited advisory opinions and the model forms, the Court cannot credit Landrum's assertion that, at the time HCEC's form was utilized, the relevant legal authorities had unanimously concluded that the inclusion of a liability release in a disclosure form violated the FCRA. Indeed, "it would defy history and current thinking to treat a defendant who merely adopts one [reasonable] interpretation [of the Act] as a knowing or reckless violator." *Safeco*, 551 U.S. at 70 n.20.

The issues raised by this litigation continue to percolate among district courts around the country. Since 2013, a court in the Northern District of Illinois has found that a liability release violates the express language of the FCRA. *Avila*, 2014 WL 3537825. There, the court denied the defendants' motion to dismiss on the ground that a plaintiff sufficiently pleads willfulness by alleging that a defendant has "'violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)' and that its conduct is 'contrary to long-standing regulatory guidance and

---

[5] Notably, each advisory letter includes a disclaimer that the views expressed in the letter are "those of the staff" and "not the views of the Commission itself." Hauxwell FTC Letter, 1998 WL 34323756, at *3; *accord* Steer FTC Letter, 1997 WL 33791227, at *2.

caselaw.'" *Id.* at *3. Another court, in the Eastern District of California, dismissed an FCRA complaint on the ground that "[n]one of the legal authority [three FTC staff opinion letters and several district court opinions post-dating the defendant's use of its disclosure] cited by the plaintiff suffice[d] to make [the defendant's] understanding of its obligation under the FCRA at the relevant time objectively unreasonable." *Syed*, 2014 WL 5426862, at *4.

In light of all the competing authorities available to HCEC, it cannot be said that it was objectively unreasonable for the company to presume the lawfulness of including a liability waiver as part of a background check disclosure document. Because Landrum cannot make this critical showing, Counts 2 and 3 of the complaint fail as a matter of law.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, HCEC's motion for partial summary judgment (ECF No. 12) is GRANTED.

SIGNED on this 16th day of July, 2015.

_____

Kenneth M. Hoyt
United States District Judge